# United States Court of Appeals
## For the First Circuit

No. 05-2134

BERTHA TOLOZA-JIMÉNEZ,

Petitioner,

v.

ALBERTO R. GONZÁLES,
UNITED STATES ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Gregory M. Sullivan, on brief for petitioner.
Thomas L. Holzman, Special Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Peter D. Keisler, Assistant Attorney General, Civil Division, and Greg D. Mack, Senior Litigation Counsel, on brief for respondent.

August 11, 2006

**TORRUELLA, Circuit Judge.** Petitioner Bertha Toloza-Jiménez ("Toloza") asks us to review the Board of Immigration Appeals' ("BIA") denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). After careful review, we affirm the decision of the BIA and deny the petition for review.

## I. Background

Toloza is a native and citizen of Colombia who entered the United States at Miami, Florida on July 6, 2002 as a non-immigrant with authorization to remain in the United States until January 5, 2003. Her husband and son, both natives and citizens of Colombia, had previously been admitted into the United States on tourist visas. All three overstayed.

On January 9, 2003, Toloza filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In her application for asylum, Toloza alleged that in 1975, she lived with her husband and daughter in the Aranjuez ward in Medellín, Colombia.[1] According to Toloza, some members of the Escobar crime family sexually harassed her daughter, threatened to kill Toloza if she reported them to the police, and forced her to hide weapons for them. In 1979, Toloza purchased a farm. She stated in her application that the

---

[1] Toloza's daughter is currently living in the United States and was not included in the application for asylum.

Revolutionary Armed Forces of Colombia ("FARC"), a guerilla group, took possession of the farm in 1985 to use as a military base. In 1986, Toloza and her family moved to the San Cristóbal ward in Medellín because of threats from the Escobar crime family.[2] At this new location, Toloza's husband, who owned a repair shop, was allegedly forced to contribute money to the FARC. In one instance, Toloza claimed that the FARC stopped her and her husband at a checkpoint and forced them to transport FARC members in their truck. In 1989, Toloza purchased another farm where she allegedly offered assistance to victims of the civil war.

The asylum officer found that the alleged harm did not rise to the level of persecution on the basis of any of the statutory grounds[3] and that Toloza had failed to establish a well-founded fear of future persecution. The asylum officer referred the matter to an Immigration Judge ("IJ").

On January 28, 2003, the Immigration and Naturalization Service ("INS")[4] served Notices to Appear charging that Toloza, her

---

[2] Toloza does not allege any connections between the Escobar crime family and the FARC guerillas.

[3] The five protected characteristics are "race, religion, nationality, membership in a particular social group, [and] political opinion." 8 U.S.C. § 1158(b)(1)(B)(i).

[4] In March 2003, all of the relevant functions of the INS were transferred to the new Department of Homeland Security, where they were reorganized as the Bureau of Immigration and Customs Enforcement ("BICE"). See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)). Throughout the opinion we will refer to the

husband, and her son were subject to removal for overstaying their visas pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B).

On March 9, 2003, a hearing was held before an IJ. At the hearing, Toloza, her husband, and her son admitted the factual allegations in the Notice to Appear, conceded removability, and asked for asylum, withholding of removal, relief under the CAT, and voluntary departure in the alternative. Toloza then testified in support of her application.[5]

She testified that she had visited the United States on two previous occasions, in 1996 and 2001, before requesting asylum. Toloza stated that the FARC threatened and persecuted her and her family because she was a member of the Liberal Party. She testified that the FARC threatened her in March 2002 ("the March 2002 incident"),[6] that the FARC regularly extorted money from her husband, and that she was stopped at a FARC checkpoint and forced to transport guerilla troops in 1999.

On cross-examination, Toloza admitted that she had omitted the March 2002 incident from her application for asylum. When asked to explain this omission, Toloza first intimated that

---

agency as the INS.

[5] Toloza was the only applicant who testified at the hearing. Therefore, she is considered the lead petitioner.

[6] Toloza initially could remember neither the month when the event occurred, nor how many FARC members threatened her.

-4-

she had forgotten about the incident, then stated that she had remembered the incident but did not include it in the application. Toloza also stated that the only incident that she mentioned at the interview at the asylum office was the 1999 checkpoint incident.[7] María Mahia ("Mahia")[8], a friend of Toloza's from Colombia, also testified for her. Mahia stated that Toloza had told her of the problems with the guerillas. However, Mahia did not witness any of the harms alleged by Toloza.

The IJ found that Toloza's testimony was "general, meager, weak, and superficial." More specifically, the IJ found that the testimony about the March 2002 incident was not credible. The IJ based his finding on the fact that Toloza initially remembered neither the month when the event happened nor how many FARC members threatened her, and that she did not include the March 2002 incident in her asylum application or mention it in her interview with the asylum officer. In the light of the fact that the March 2002 incident purportedly "precipitated the [Toloza's] flight to the United States," the IJ noted that Toloza's meager testimony was "disingenuous at best." Further, the IJ found that the 1985 incident had no connection to her present situation because she visited the United States twice after the event

---

[7] The asylum officer's Assessment to Refer does not mention the March 2002 incident.

[8] Mahia has political refugee status in the United States.

occurred and each time she returned to her country, thus demonstrating that she did not fear persecution. The IJ also concluded that the alleged harm experienced by Toloza was caused by "pervasive criminality" in her country and not by persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion." Therefore the IJ denied Toloza's claims for asylum, withholding for removal, and relief under CAT. The IJ also concluded that Toloza was not eligible for voluntary departure, but that her husband and her son were.

Toloza appealed the IJ's decision to the BIA. On July 8, 2005, the BIA rendered a decision affirming the order of the IJ. Toloza now petitions for review of this decision.[9]

## II. Analysis

### A. Standard of Review

In reviewing BIA decisions, we give substantial deference to its findings of fact, which include credibility determinations. Nikijuluw v. Gonzáles, 427 F.3d 115, 120 (1st Cir. 2005); Bocova v. Gonzáles, 412 F.3d 257, 262 (1st Cir. 2005); Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005). We will uphold the BIA's findings of fact if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v.

---

[9] Toloza did not make any argument about CAT relief in her brief. Because an argument not raised in an appellate brief is deemed waived, see Mediouni v. INS, 314 F.3d 24, 28 n.5 (1st Cir. 2002), we find that Toloza has waived any argument for relief under the CAT.

Elías-Zacarías, 502 U.S. 478, 481 (1992) (citation and internal quotation marks omitted).  The BIA decision can be reversed only if the evidence presented by the asylum seeker is such as would compel a reasonable trier of fact to make a contrary determination.  Id.; see also  Aguilar-Solís v. INS, 168 F.3d 565, 569 (1st Cir. 1999).  Nonetheless, "credibility findings resting on analysis of testimony rather than on demeanor may deserve less than usual deference."  Cordero-Trejo v. INS, 40 F.3d 482, 487 (1st Cir. 1994) (citation and internal quotation marks omitted).  The BIA's rulings of law are reviewed under a de novo standard.  Da Silva, 394 F.3d at 5.

**B.  Asylum**

Under the INA, the Attorney General or the Secretary of Homeland Security may grant asylum to a "refugee." 8 U.S.C. § 1158 (b)(1)(A).  The asylum applicant has the burden of proof to establish that she is a "refugee."  Id. § 1158(b)(1)(B)(i).  Her testimony must be credible, persuasive, and refer to specific facts.  Id. § 1158(b)(1)(B)(ii).  A "refugee" refers to any person who is unable or unwilling to return to her country of residence "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  Id. § 1101(a)(42)(A).  By establishing past persecution, an applicant establishes a rebuttable presumption of a well-founded fear of persecution.  8 C.F.R. § 208.13(b)(1).  We have previously held that "persecution

requires that the totality of a petitioner's experiences add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw, 427 F.3d at 120. We analyze the adverse credibility determination, together with Toloza's claims of past persecution and a well-founded fear of persecution.

### 1. Credibility

In her brief, Toloza does not challenge the adverse credibility determination. She has therefore waived any argument on this issue. See Mediouni v. INS, 314 F.3d 24, 28 n.5 (1st Cir. 2002).

### 2. Past Persecution

The adverse credibility determination disposes of Toloza's claim of past persecution. See Olujoke v. Gonzáles, 411 F.3d 16, 22 (1st Cir. 2005) ("[A] fully supported adverse credibility determination, without more, can sustain a denial of asylum."); cf. 8 U.S.C. § 1158(b)(1)(B). Even assuming Toloza was credible, she failed to establish past persecution for two reasons.

First, persecution is more than "unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000). Even assuming that Toloza was credible, none of the incidents described by Toloza rises to the level of persecution. See id. at 264 (finding no persecution where the asylum applicant testified about three episodes of solitary confinement of less than 72 hours, physical abuse, periodic

-8-

surveillance, threatening phone calls, and occasional stops and searches).

Second, persecution must be motivated by one of five statutory grounds: "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1158 (b)(1)(B)(i). Although Toloza alleges that she is a member of the Liberal Party, encouraged her fellow citizens to vote for the "democratic parties," and provided assistance to orphans and drug addicts, she fails to establish any connection between these activities and the alleged persecution. Therefore, the record does not compel us to overturn the IJ's finding that the harm allegedly experienced by Toloza was not politically motivated.

Because she failed to show that her experiences rise to the level of persecution, and because she could not provide a causal connection between these experiences and any of the statutory grounds for persecution, we find that Toloza, even if credible, cannot establish past persecution.

### 3. Future Persecution

An alien can show her eligibility for asylum not only by demonstrating past persecution but also by demonstrating a "well-founded fear of persecution." Id. § 1101(a)(42)(A). The test for a well-founded fear of persecution has both a subjective component and an objective one. Nikijuluw, 427 F.3d at 121. In order to show a well-founded fear of persecution, "an applicant must not

only harbor a genuine fear of future persecution, but also must establish an objectively reasonable basis for that fear." Laurent v. Ashcroft, 359 F.3d 59, 65 (1st Cir. 2004).

Toloza failed to satisfy the subjective component because she could not show that she has a genuine fear of persecution. First, she was found not credible regarding the March 2002 incident. Second, she traveled twice to the United States, in 1996 and 2001, and yet she returned to Colombia each time, strongly indicating that she has no fear of persecution. In the light of this consideration, we affirm the BIA's finding that Toloza did not establish a well-founded fear of persecution.

Because she could show neither past persecution, nor a well-founded fear of persecution, Toloza is not eligible for asylum.[10]

### III.  Conclusion

For the reasons stated above, the petition for review is denied.

_____**DENIED**.

---

[10] Having failed to establish eligibility for asylum, Toloza cannot meet the standard for withholding of removal. In order to be eligible for withholding of removal to a country, the applicant must "establish that it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to that country." 8 C.F.R. § 1208.16(b)(2). This standard is more stringent than the standard for asylum. See Afful v. Ashcroft, 380 F.3d 1, 6 (1st Cir. 2004). Therefore, we find that Toloza failed to establish eligibility for withholding of removal.