# United States Court of Appeals

## For the First Circuit

No. 06-1479

DANY HENG,

Petitioner,

v.

ALBERTO R. GONZALES, Attorney General,

Respondent.

ON PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Circuit Judge,

Selya, Senior Circuit Judge,

and Shadur,* Senior District Judge.

Martin J. McNulty on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Terri J. Scadron, Assistant Director, Civil Division and Janet A. Bradley, Trial Attorney, Civil Division, Office of Immigration Litigation, United States Department of Justice, on brief for respondent.

July 12, 2007

*Of the Northern District of Illinois, sitting by designation.

**HOWARD**, **Circuit Judge**. Dany Heng petitions for review of an order of the Board of Immigration Appeals (BIA) rejecting her claims for asylum and withholding of removal. Heng is a native of Cambodia who came to the United States on a tourist visa in February 2001. In March 2003, she applied for asylum, claiming that she had been persecuted on account of her membership in a Cambodian political party. Three months later, the Department of Homeland Security commenced removal proceedings against Heng for overstaying her visa. Heng appeared before an immigration judge (IJ) and conceded removability but sought asylum. The IJ ruled that Heng's asylum application was untimely and that the late filing was not excused by extraordinary circumstances or changed conditions. See 8 U.S.C. § 1158(a)(2). The IJ therefore treated Heng's asylum request as a request for withholding of removal.

Heng was the only witness at her removal hearing. Through a translator, she testified as follows. Heng was born in Cambodia in 1958 and married Seng Sophal in 1984. She and her husband were members of the Sam Rainsy Party (SRP), a political rival to the Cambodian People's Party headed by Prime Minister Hun Sen, a former member of the Khmer Rouge. Heng's mother and older sister had been killed by the Khmer Rouge during Pol Pot's reign.

Heng's husband worked on behalf of the SRP every day. Heng was less active but did raise funds to support the party. In April 1996, police officers loyal to the People's Party came to

Heng's house and held Heng and her husband at gun point. The officers told Heng and her husband to cease their political activities and to take down a pro-SRP poster hanging on their wall. When Heng's husband refused to take down the poster, the officers threatened to kill him.

Just before the 1998 national election, People's Party members tried to kill members of the SRP. Heng and her husband were able to escape the violence and temporarily relocated to another part of the country. When they returned home, they continued working for the SRP. Shortly after their return, Heng and her husband were assaulted by People's Party officials while attempting to distribute SRP literature. At that time, the officers threatened to kill Heng and hit her on the shoulder with a gun.

The People's Party won the 1998 national election. Shortly thereafter, government officials arrested Heng's husband, but he was able to escape. In September 1998, Heng and her husband were detained while leading another protest. The police beat Heng's husband in front of her and then separated them. Heng was detained for three days, given no water, and was almost suffocated while imprisoned. SRP officials were, however, able to secure Heng's release.

In November 2000, a battle broke out between government forces and the SRP. The government forces murdered several of

Heng's husband's associates and wanted to murder him as well, but he escaped.  This was the last time that Heng saw her husband. Heng came to the United States in February 2001.  In January 2003, Heng learned from her sister that her husband had been murdered by People's Party officials.

The IJ rejected Heng's withholding of removal claim on the ground that she was not a credible witness.  The IJ gave four reasons for this credibility determination: (1) it was not believable that People's Party members would come to Heng's house to order her to take down an SRP poster hanging on an interior wall; (2) Heng stated at her hearing that SRP members secured her release from prison but stated in her asylum application that human rights workers obtained her release; (3) Heng testified that her husband was arrested after the 1998 national election but did not mention this incident in her asylum application; and (4) Heng first testified that she learned about her husband's death while in Cambodia but then testified that she learned about his death after coming to the United States.  Heng appealed to the BIA, which affirmed in a per curiam order adopting the IJ's opinion.

Heng initially challenges the ruling that her asylum application was untimely.  We lack jurisdiction over this aspect of her petition for review and therefore consider only whether her claim for withholding of removal was properly denied.  See Stroni

v. Gonzales, 454 F.3d 82, 87 (1st Cir. 2006); Mehilli v. Gonzales, 433 F.3d 86, 92 (1st Cir. 2005).

Withholding of removal is available if "the alien's life or freedom would be threatened in the destination country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005) (quoting 8 U.S.C. §1231(b)(3)(A)). To qualify for withholding of removal, the alien must demonstrate either that she has suffered past persecution on account of a protected ground (thus creating a rebuttable presumption that she may suffer future persecution) or that it is more likely than not that she will be persecuted on account of a protected ground if sent to the destination country. Id.; see Ang v. Gonzales, 430 F.3d 50, 58 (1st Cir. 2005) (explaining that applicant for withholding of removal must show a "clear probability" of persecution upon removal from the United States).

While we normally review the BIA decision, where as here the BIA adopted the IJ's decision we review the IJ's decision directly. Simo v. Gonzales, 445 F.3d 7, 11 (1st Cir. 2006). When reviewing a determination that a petitioner was not credible, we ask whether the adverse credibility determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. Under this standard, we will not upset the IJ's determination "unless any reasonable adjudicator

would be compelled to conclude to the contrary." Hoxha v. Gonzales, 446 F.3d 210, 216 (1st Cir. 2006). However, a petitioner's testimony may not be rejected unless the IJ has provided a specific, cogent, and supportable explanation for this conclusion. Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004). Moreover, where an IJ's adverse credibility finding rests on an analysis of the petitioner's testimony and not her demeanor, the finding may receive "less than [the] usual deference." Toloza-Jimenez v. Gonzales, 457 F.3d 155, 159 (1st Cir. 2006).

We have reviewed the IJ's grounds for the adverse credibility determination and find them inadequate, alone and in combination. The IJ's first ground was his disbelief that People's Party operatives would enter Heng's house to remove an SRP sign hanging on an interior wall. The IJ's description of Heng's testimony is inaccurate. Heng did not testify that the operatives came to her house to remove the sign. Rather, she testified that the operatives knew that her husband was a leader of the SRP and came to the house to threaten violence if he continued his political activities. As part of the threat, they ripped down the sign.

Second, the IJ stated that Heng's testimony concerning her release from prison was inconsistent with her asylum application because, at her hearing, she testified that SRP officials won her release, while in her application she credited

-6-

"human rights workers."  When government counsel questioned Heng about this apparent inconsistency, she stated that it resulted from a mistranslation by the individuals who helped her prepare her asylum application.  See He v. Ashcroft, 328 F.3d 593, 598 (9th Cir. 2003) (stating that "faulty or unreliable translations can undermine evidence on which an adverse credibility determination is based"); accord Ememe v. Ashcroft, 358 F.3d 446, 452 (7th Cir. 2004); Balasubramanrim v. INS, 143 F.3d 157, 164 (3d Cir. 1998).  Moreover, this alleged discrepancy does not "involve the heart" of Heng's claim.  Bojorques-Villanueva v. INS, 194 F.3d 14, 16 (1st Cir. 1999) (stating that an adverse credibility finding may not be based on discrepancy in testimony that does not go to "the heart" of petitioner's claim).  The essence of Heng's claim was that she had been arrested at a political rally by government officials and held in detention for three days without water while almost suffocating.  The accuracy of the description she applied to the people who helped secure her release was not a central fact.  See Ren v. Ashcroft, 145 Fed. Appx. 378, 382 (1st Cir. 2005) (concluding that the discrepancy regarding why government officials were searching for petitioner did not go to the "heart of the asylum claim," even though it was not "entirely unrelated" to it).  Finally, we are not sure that this is even properly characterized as a discrepancy.  A witness could understandably refer to someone who saved her from political imprisonment as a "human rights

worker," even if the person was also a member of a political party.

Third, the IJ faulted Heng for testifying that her husband was arrested after the 1998 election because she did not include this incident in her asylum application. "Asylum applicants are not required to list every incident of persecution." Pavlova v. INS, 441 F.3d 82, 90 (2d Cir. 2006); accord Pop v. INS, 270 F.3d 527, 531-32 (7th Cir. 2001) ("We hesitate to find that one seeking asylum must state in his or her application every incident of persecution lest the applicant have his or her credibility questioned if the incident is later elicited in direct testimony."); Aquilera-Cote v. INS, 914 F.2d 1375, 1382 (9th Cir. 1990) (stating that an alien's "failure to file an application form that was as complete as might be desired cannot, without more, properly serve as the basis for finding a lack of credibility"). Here, the omitted incident was not one of the major claims underlying Heng's request for relief. Indeed, her entire testimony concerning this incident accounted for less than a half page of transcript. In light of Heng's allegation that she was held in confinement without water for three days, and that her husband was subsequently murdered by People's Party officials, the failure to include this less serious event in her application should not be fatal to her claim.

Finally, the IJ doubted Heng's testimony because of a purported inconsistency concerning when she learned that her

-8-

husband had been murdered.  The IJ understood Heng as first testifying that she learned of the murder while she was in Cambodia, and later testifying that she learned about the murder after coming to the United States.  This latter testimony was consistent with the information in her asylum application.  This discrepancy is insufficient to ground the IJ's credibility finding. Heng corrected her testimony almost immediately, and before anyone brought to her attention the discrepancy between her testimony and her application.  Moreover, Heng's hearing was marked by numerous translation difficulties, and it appears to us that the alleged discrepancy resulted from confusion, and not from an attempt at fabrication.  As the Seventh Circuit recently observed:

> Translation is a complex and tiring task; errors are bound to occur even in the best of circumstances with the most competent translators.  Errors cannot be avoided, but immigration judges must be sensitive to the complexities of receiving testimony through a translator and take into account these difficulties when assessing credibility.

Giday v. Gonzales, 434 F.3d 543, 549 n.2 (7th Cir. 2006).

For the reasons stated, the IJ's credibility determination is not supported by substantial evidence.  We therefore **grant** the petition for review, **vacate** the order of removal, and **remand** to the BIA for further proceedings.

**So ordered**.