# United States Court of Appeals

## For the First Circuit

No. 07-1516

DENNY STENLY ROTINSULU,

Petitioner,

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE BOARD

OF IMMIGRATION APPEALS

Before

Boudin, <u>Chief Judge</u>,
Selya, <u>Senior Circuit Judge</u>,
and Gelpi,** <u>District Judge</u>.

  <u>Wei Jia</u> and <u>Law Office of Wei Jia</u> on brief for petitioner.

  <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, <u>Terri J. Scadron</u>, Assistant Director, Office of Immigration Litigation, and <u>Corey L. Farrell</u>, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

February 8, 2008

*Of the District of Puerto Rico, sitting by designation.

**SELYA**, **Senior Circuit Judge**.  The petitioner, Denny Stenly Rotinsulu, an Indonesian national, is an Adventist Christian.  He seeks judicial review of a decision of the Board of Immigration Appeals (BIA) denying his requests for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).  We deny the petition.

The background facts are not seriously disputed.  The petitioner is a native of Manado, a city in the Indonesian province of North Sulawesi.  He arrived lawfully in the United States as a non-immigrant visitor on March 13, 1995, and was authorized to remain until September 13, 1995.  He overstayed.

Roughly eight years went by before federal authorities commenced removal proceedings.  See 8 U.S.C. § 1227(a)(1)(B).  The petitioner conceded removability and cross-applied for asylum, withholding of removal, and protection under the CAT.

At a hearing before an immigration judge (IJ), the petitioner testified that he feared persecution on account of his religion should he be remitted to Indonesia.  In support of this claim, he recounted that he had dated a young Muslim woman from 1990 to 1992, but eventually declined her importunings that they marry.  The woman's family members reacted badly to this perceived slight. Believing that the couple had engaged in extra-marital relations, they became enraged by the petitioner's refusal to plunge into matrimony and repeatedly threatened to kill him.

Despite the fact that these death threats began in 1992, the petitioner stayed put until sojourning to the United States in 1995. He at no point during that three-year interval sought either the assistance or the protection of the police.

At the conclusion of the hearing, the IJ decided the case ore tenus. The petitioner's testimony was unrebutted and the IJ generally credited it. He nonetheless rejected all three of the petitioner's claims for relief. In the IJ's view, asylum was time-barred and no entitlement to either withholding of removal or protection under the CAT had been proven.

The petitioner appealed to the BIA, which affirmed the IJ's decision. This timely petition for judicial review followed.

Before us, the petitioner has abandoned his asylum claim. That is a wise decision, as we lack jurisdiction to review the BIA's determination in regard to the timeliness of a petition for asylum. See 8 U.S.C. § 1158(a)(3); Lumanauw v. Mukasey, 510 F.3d 75, 76-77 (1st Cir. 2007); Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007).

The petitioner's brief similarly fails to spell out any challenge to the BIA's disposition of his CAT claim. Accordingly, we deem that claim — like his asylum claim — to be abandoned. See Aquilar v. U.S. ICE, 510 F.3d 1, 13 n.3 (1st Cir. 2007); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-3-

This leaves only the claim for withholding of removal. To gain perspective, we pause to delineate the nature of this claim.

Under the Immigration and Nationality Act, an alien may qualify for withholding of removal by showing a clear probability that, upon repatriation, he will be persecuted on account of a protected ground. See 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b); see also INS v. Stevic, 467 U.S. 407, 429-30 (1984). An alien can make this showing by demonstrating that, more likely than not, he will be persecuted if returned to his homeland. See, e.g., Pan, 489 F.3d at 85-86. The regulations place the devoir of persuasion squarely on the alien and direct an inquiring court to evaluate whether the evidence proffered by the alien satisfies the regulatory criteria. 8 C.F.R. § 1208.16(b).

If the alien cannot make a direct showing as to the likelihood of future persecution, he nonetheless may qualify for withholding of removal by making an indirect showing. This course entails proving that he was the victim of past persecution on account of a protected ground, thereby triggering a rebuttable presumption that he harbors a well-founded fear of future persecution. 8 C.F.R. § 1208.16(b)(1). Once triggered, that presumption shifts the burden to the government to prove that the alien can return safely to his native land. See Ang v. Gonzales, 430 F.3d 50, 55 (1st Cir. 2005).

With this framework in place, we turn to the claim at hand. Notably, the petitioner eschews any challenge to the merits of the BIA's denial of withholding of removal. Rather, he alleges that the BIA impermissibly engaged in de novo factfinding when it affirmed the IJ's ruling. This challenge is legal in nature. Consequently, our review is plenary, with deference to the BIA's interpretation of the regulations under which it operates. See Pan, 489 F.3d at 85.

An agency has an obligation to abide by its own regulations. See Accardi v. Shaughnessy, 347 U.S. 260, 265-67 (1954). The failure to follow an applicable regulation may be a sufficient ground for vacation of an agency's decision, resulting in a remand. See Picca v. Mukasey, ___ F.3d ___, ___ (2d Cir. 2008) [2008 WL 80402, at *4]; Nelson v. INS, 232 F.3d 258, 262 (1st Cir. 2000). The petitioner's argument hinges on these principles.

Refined to bare essence, his argument is that the BIA engaged in improper factfinding in contravention of one of its own regulations, thus tainting its decision and necessitating a remand. That regulation prohibits the BIA, with exceptions not applicable here, from "engag[ing] in factfinding in the course of deciding appeals." 8 C.F.R. § 1003.1(d)(3)(iv). The petitioner asseverates that the BIA transgressed this prohibition when it concluded, in its written decision, that the death threats described by the

petitioner did not rise to the level of past persecution. This position is without merit.

To begin, the petitioner's contention is based on the premise that the BIA engaged in de novo factfinding because the IJ had not decided the issue of past persecution. As we explain below, that premise is faulty.

It is clear beyond hope of contradiction that the IJ addressed the lack of any likelihood that the petitioner would face persecution upon his return to Indonesia. He found unambiguously that the petitioner "ha[d] not met his burden of proving that it is more likely than not, or in other words, that there is a clear probability that he will be subjected to persecution on account of his religion or any of the [other] enumerated grounds if he were to return to Indonesia." This finding seemingly subsumes the question of past persecution. Implicit in it is a subsidiary finding that the petitioner's evidence did not suffice to trigger a rebuttable presumption. That is just another way of saying that there was no cognizable showing of past persecution.

This conclusion is buttressed by the fact that the IJ at one point commented specifically on the question of past persecution. Referring to the petitioner's proffer, the IJ noted that the petitioner, on cross-examination, had virtually conceded that his girlfriend's relatives "essentially [were] upset because he refused to marry [her] after he had engaged in sexual relations

-6-

with her." Fairly read, this comment is tantamount to a finding that the death threats were anchored in the petitioner's philandering, not in his religion.

The petitioner argues that the IJ was obliged to make a more explicit finding as to past persecution. This argument elevates hope over reason. Although we expect an immigration judge to make findings on all grounds that are necessary to support his decision, those findings can be either explicit or implicit. See Un v. Gonzales, 415 F.3d 205, 209 (1st Cir. 2005). The IJ's express determination that the petitioner failed to carry his burden of proof on the issue of future persecution, read in conjunction with his depiction of the petitioner's past experiences as no more than the aftermath of a soured romance, suffices to show that the IJ, at least by implication, resolved the issue of past persecution.[1]

There is a second reason why we deem the petitioner's contention unconvincing: it misconstrues the regulation in question, which was promulgated as part of an effort to restrict the "introduction and consideration of new evidence in proceedings before the [BIA]." BIA Procedural Reforms to Improve Case

---

[1]Typically, we have found the absence of specific findings problematic in cases in which such a void hampers our ability meaningfully to review the issues raised on judicial review. See, e.g., Hernández-Barrera v. Ashcroft, 373 F.3d 9, 25 (1st Cir. 2004). There is no such concern here; the IJ's decision, while brief, provides an adequate roadmap for judicial review.

Management, 67 Fed. Reg. 54,878, at 54,891 (Aug. 12, 2002). The regulation was not intended to restrict the BIA's powers of review, including its power to weigh and evaluate evidence introduced before the IJ. See Belortaja v. Gonzales, 484 F.3d 619, 624-25 (2d Cir. 2007). Here, the BIA did not supplement the record by considering new evidence but, rather, merely analyzed the evidence that had been presented in the immigration court.

The petitioner's reliance on cases such as Ramirez-Peyro v. Gonzales, 477 F.3d 637 (8th Cir. 2007), and Chen v. Bureau of Citiz. & Immig. Servs., 470 F.3d 509 (2d Cir. 2006), is mislaid. Each of those courts was confronted with a situation in which the BIA overturned an IJ's ruling after failing to cede proper deference to the IJ's findings of fact. See Ramirez-Peyro, 477 F.3d at 641; Chen, 470 F.3d at 515. In contrast, the BIA in this case did not in any way impeach, impugn, or denigrate the IJ's factual findings; it simply explained, based upon its review of the record, why it considered the IJ's decision to be supportable. We cannot say that the BIA, in following that course, violated its own regulations.

We add a coda. If there were any material deficiency in the BIA's decision — and we discern none — that error would have been harmless. The petitioner's evidence, taken in the light most favorable to him, suggests no more than a private squabble between him and the family of his quondam lover. Given the well-settled

rule that withholding of removal cannot be premised on what is essentially a personal dispute, <u>Da Silva</u> v. <u>Ashcroft</u>, 394 F.3d 1, 6 (1st Cir. 2005), no finding of past persecution could have been made. <u>See</u>, <u>e.g.</u>, <u>Pieterson</u> v. <u>Ashcroft</u>, 364 F.3d 38, 45 (1st Cir. 2004). And, finally, the record is barren of any evidence sufficient to build a bridge between the threats complained of and any government action or inaction. That gap in the record, in and of itself, suffices to doom the petitioner's claim of past persecution. <u>See</u>, <u>e.g.</u>, <u>Nikijuluw</u> v. <u>Gonzales</u>, 427 F.3d 115, 120-21 (1st Cir. 2005).

We need go no further. For the reasons elucidated above, we conclude that the BIA's ukase must be upheld.

**<u>The petition for review is denied</u>**.