# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1569

_____

Guillermo Eduardo Ramirez-Peyro,    *
    *
           Petitioner,    *
    *  On Petition for Review of an
        v.    *  Order of the Board of
    *  Immigration Appeals.
Alberto Gonzales, Attorney General    *
of the United States of America,    *
    *
           Respondent.    *

_____

Submitted: January 12, 2007
Filed:   February 23, 2007

_____

Before MURPHY, HANSEN, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Petitioner Guillermo Ramirez-Peyro (Ramirez) sought asylum, withholding of removal, and protection under the Convention Against Torture (CAT), claiming that if he were returned to his native Mexico he would be harmed or killed in retaliation for his work as an informant for United States agents. The immigration judge granted him deferral of removal under CAT, but the Board of Immigration Appeals (Board) reversed and ordered Ramirez removed to Mexico. Ramirez petitions for review, arguing that the Board applied the incorrect standard of review. We remand for further proceedings.

Ramirez was born in Mexico in 1971. By his own account, he became involved in drug trafficking after leaving his job with the Mexican highway police in 1995, and he oversaw the warehousing and distribution of large amounts of cocaine in Guadalajara, Mexico. In 2000 he became a confidential informant for the United States Customs, now the Bureau of Immigration and Customs Enforcement (ICE). He was subsequently asked to infiltrate the Juarez Cartel run by Vincente Carillo Fuentes, one of Mexico's most dangerous and prolific narcotics trafficking organizations. Ramirez claims to have facilitated the arrest of some 50 individuals, including Heriberto Santillan, a top lieutenant in the Juarez Cartel. Ramirez was taken into United States custody as a material witness necessary to the prosecution of Santillan, who eventually pled guilty to a drug trafficking charge. Ramirez also gave a statement to representatives of the Mexican government implicating Santillan in the murders of rival drug traffickers.

Ramirez was temporarily paroled into this country for the public benefit in connection with his work for United States agencies, but he was never admitted. He states that he has been in protective custody since 2004. His parole permit expired on January 14, 2005, and he was subsequently placed into expedited removal proceedings. On May 9, 2005 the Department of Homeland Security (DHS) issued a Notice to Appear charging Ramirez with being subject to removal under section 212(a)(7)(A)(i)(I) of the Immigration and Naturalization Act (INA) on the ground that he was an applicant for admission not in possession of a valid immigration document. 8 U.S.C. § 1182 (a)(7)(A)(i)(I).

Ramirez conceded that he was removable, but filed an application for asylum, withholding of removal, and relief under the Convention Against Torture, claiming that he feared torture and death at the hands of the Juarez Cartel and Mexican law enforcement acting on the cartel's behalf. Ramirez had an interview with an asylum officer who found that he had a credible fear of persecution from the Mexican

government based on his own testimony and a 2004 Department of State report that described the involvement of Mexican police officers in criminal activity, including acts of violence, on behalf of drug cartels. After a reviewing supervisor concurred in his assessment, the asylum officer gave Ramirez's case a positive referral to an immigration judge.

Ramirez appeared before an immigration judge on June 9, 2005. He conceded in his prehearing brief that he had been involved in drug trafficking in Mexico, rendering him ineligible for asylum and withholding of removal. See 8 U.S.C. § 1231(b)(3)(B)(iii) (withholding and asylum barred where alien had committed "serious nonpolitical crime outside the United States . . ."); see also In re Y-L-, 23 I. & N. Dec. 270, 274 (BIA 2002) (drug trafficking constitutes a particularly serious crime). He maintained that he was entitled to deferral of removal under the Convention Against Torture, which contains no so such bar on the basis of prior criminal activity. CAT protects an individual from being returned to a country where it is more likely than not that he will be tortured. 8 C.F.R. § 1208.16(c)(2). To warrant relief, the harm feared must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." Id. § 1208.18(a)(1).

Although it is not enough that a government is aware of torture but powerless to stop it, see In re S-V-, 22 I. & N. Dec. 1306, 1312 (BIA 2000), a government official may be responsible for torture under CAT if he knows that it will occur and "thereafter breach[es] his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). In order to determine the likelihood that an applicant faces torture in the proposed country of removal, the immigration judge must consider all evidence, including but not limited to: (1) evidence of past torture inflicted upon the applicant, (2) evidence that the applicant could relocate to another part of the country where he is not likely to be tortured, (3) evidence of gross, flagrant

or mass violations of human rights within the country of removal, and (4) other relevant country conditions.  Id. § 1208.16(c).

Ramirez claimed that he would be tortured and killed if he were removed to Mexico and that he feared retaliation not only from members of the Jaurez Cartel but also from members of the police force who worked on their behalf, alleging that all levels of the Mexican police had illicit connections to drug trafficking.  He testified that while working as an ICE informant he witnessed police officers murder individuals at the behest of Santillan and other members of the Juarez Cartel, and that he saw many other bodies of individuals killed in a similar fashion.  He also testified that Mexican authorities would often alert the cartel about informants, and that on at least one occasion Mexico's Federal Agency of Investigation (AFI) provided information to the cartel about a possible informant, leading to his murder.

Ramirez further testified that ICE agents warned him that his life was in danger and that two attempts had already been made on his life in connection with his work for ICE.  He stated that he and his family, which had been relocated to the United States for their protection and at the federal government's expense, had already been paid some $220,000 by the United States government for his work as an informant but that ICE had also orally agreed to give him resident status in this country.  He testified that he was surprised when he was placed into removal proceedings.  Ramirez was the only witness to testify at the hearing, but both parties submitted documentary evidence, including country reports from the Department of State confirming the close relationship between Mexican law enforcement and drug cartels, records detailing Ramirez's relationship with ICE, evidence that United States government officials were concerned for his safety, and newspaper accounts of his role as an ICE informant. Some of these news reports suggested that Ramirez's relationship with ICE had become a source of embarrassment for the federal government, since he had been

-4-

present when cartel members murdered several rival drug traffickers and was alleged to have some role in those killings and or their coverup.

In an oral decision on August 11, 2005, the immigration judge (IJ) concluded that relief was "clearly" warranted under CAT, credited Ramirez's testimony, and noted that the documentary evidence indicated that "there are U.S. law enforcement officials who believe that this cartel would be most interested in having the respondent killed." The IJ found that the threat to Ramirez came not just from members of the cartel, but also from parts of the Mexican government:

> Mexican law enforcement, to a great extent, has carried out various crimes on behalf of the narco-traffickers in Mexico. And there really does not seem to be much dispute with the respondent's testimony that the Mexican police were involved in some of the killings he witnessed. Further, there is information that high-ranking national police officials in Mexico turned over information on informants to the cartel.

The IJ determined that "it is more likely than not that [Ramirez] would be subjected to torture or worse were he returned to Mexico at this time" and granted his application for deferral of removal to Mexico.

DHS appealed the IJ's decision and the Board of Immigration Appeals reversed. Although the Board found no clear error in the IJ's credibility finding, it concluded the Ramirez was nevertheless not entitled to relief under CAT because (1) he had failed to establish that the harm he faced would more likely than not be inflicted by government officials or with their consent or acquiescence, and (2) the threat to Ramirez was localized in the north of Mexico in close proximity to Juarez so that Ramirez could safely relocate to another part of the country. The Board ordered him removed to Mexico.

Ramirez petitions for review, arguing that the Board incorrectly reviewed the IJ's findings of fact de novo and improperly engaged in its own fact finding. Acknowledging that it was not clear that the Board had employed the appropriate clear error standard, the government filed a motion to remand this case to the Board so that it could clarify its standard of review. Ramirez initially opposed the motion but now also asks this court to remand. The only real dispute is whether this court should review the administrative record and conduct its own evaluation of the IJ's factfinding before remanding to the Board. Ramirez asks us to adopt the IJ's factual findings as the only appropriate reading of the evidence and remand the case with instructions for the Board to grant his application. The government argues that the Board should have the opportunity to apply the correct standard of review in the first instance.

Ramirez argues that the Board erred by supplanting the IJ's findings of fact with its own, both with respect to the role of Mexican officials in inflicting or acquiescing to torture and the possibility that Ramirez could relocate to another safe location within Mexico. Although the Board may review questions of law and discretion de novo, 8 C.F.R. § 1003.1(d)(3)(ii), it must defer to the factual findings of the immigration judge unless they are clearly erroneous, id. § 1003.1(d)(3)(i); see also In re S-H-, 23 I. & N. Dec. 462, 464 (BIA 2002). "Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals." 8 C.F.R. § 1003.1(a)(3)(iv).

Under the INA as amended by the Real ID Act, we have jurisdiction to address legal or constitutional errors made by the Board notwithstanding other provisions of the Act that limit our jurisdiction. See 8 U.S.C. § 1252(a)(2)(D). Because Ramirez raises a legal challenge to the Board's decision, we have jurisdiction over his petition regardless of whether it falls within the jurisdiction stripping language of § 242(a)(2)(C). See 8 U.S.C. § 1252(a)(2)(C) (stripping courts of appeals of jurisdiction

over orders of removal of aliens who have committed certain crimes); see also Tran v. Gonzales, 447 F.3d 937, 943 (6th Cir. 2006).

Although the Board set forth the appropriate standard of review at the outset of its decision in this case, both parties agree that it is not clear that the Board followed that standard. Nowhere did the Board conclude that there was clear error in the IJ's express finding that Ramirez was likely to be tortured by Mexican officials. Nor did the Board squarely address the evidence on which the IJ based this finding, including the concededly credible testimony of Ramirez about what he witnessed. Instead it cited isolated instances where the Mexican government has recently attempted to redress the major police corruption problem. The Board also appears to have engaged in its own factfinding in contravention of its regulations by determining that any threat to Ramirez would be restricted to the northern part of Mexico, making it possible for him to relocate elsewhere. The IJ made no specific findings about the geographic reach of the Juarez Cartel or other major drug trafficking networks, although it did note that Ramirez appeared to be in danger even within parts of the United States. If the Board concluded that the IJ erred in not specifically addressing the possibility that police involvement in drug trafficking was a problem confined to the north of Mexico or that the cartel would not be able to reach Ramirez in other parts of the country, it should have remanded the case to the IJ for further factfinding. See 8 C.F.R. § 1003.1(d)(3)(iv) ("If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge . . ."); see also In re S-H-, 23 I. & N. Dec. at 465 (remand unavoidable except in rare circumstances where factual issue is clear).

Although we conclude that the Board did not appear to apply the proper standard of review and engaged in its own factfinding, we nevertheless decline Ramirez's invitation to engage in our own analysis of the facts and their implications for his claim. "Generally speaking, a court of appeals should remand a case to an

agency for decision of a matter that statutes place primarily in agency hands." INS v. Ventura, 537 U.S. 12, 16 (2002) (remand appropriate even where court of appeals regarded facts as clearly supporting applicant); see also Gonzales v. Thomas, 126 S. Ct. 1613, 1615 (2006). Congress has entrusted the Attorney General with the authority to set standards for removal proceedings, see 8 U.S.C. § 1103(g), and pursuant to this authority the Board has been granted the power to review decisions of immigration judges, see 8 C.F.R. § 1003.1(b). To impose our own views on the merits of Ramirez's case at this point would be to "intrude upon the domain which Congress has exclusively entrusted to an administrative agency." Ventura, 537 U.S. at 16. The Board should be given the opportunity to discharge its statutory duty to review the IJ's factual findings for clear error and remand to the IJ for further proceedings if appropriate.

Accordingly we vacate the Board's decision and remand petitioner's case for further proceedings consistent with this opinion.

_____