# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4128

_____

| | | |
|---|---|---|
| Olivia Nabulwala, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review from the Board |
| | * | of Immigration Appeals. |
| Alberto R. Gonzales, Attorney General | * | |
| of the United States of America, | * | |
| | * | |
| Respondent. | * | |
| | * | |

_____

Submitted: October 20, 2006
Filed: March 21, 2007

_____

Before MELLOY, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Olivia Nabulwala challenges the final order of the Board of Immigration Appeals (BIA) denying her claim for asylum, withholding of removal, and relief under the Convention Against Torture. Having jurisdiction under 8 U.S.C. § 1252(a)(2)(D), this court grants the petition and remands.

I.

Nabulwala, a Ugandan citizen, first realized she was a lesbian while attending high school in Uganda. In 1994, during her senior year, she admitted this fact to her parents. Her father became very mad. A family meeting was called. An aunt physically abused her; her family urged her to marry but eventually decided to send her to a co-ed school, hoping she would stop being a lesbian.

In June 1999, while attending a university, Nabulwala became a member of "Wandegeya," a lesbian organization advocating gay rights. In November, during a Wandegeya meeting of about 15 people, an angry mob of about 20 people attacked the group, throwing stones and hitting them with sticks.[1] Nabulwala was hospitalized overnight with scratches on her arms and bruises on her head and body. The Wandegeya organization eventually disbanded.

In March 2001, Nabulwala's family found out that she was still a lesbian; her parents were very upset.[2] After another family meeting, two relatives forced her to have sex with a stranger. She was then expelled from her clan. Disowned by her family, she moved into the YMCA.

---

[1]According to Nabulwala, the Ugandan Human Rights Commission also arrived and told Wandegeya to dissolve and stop engaging in homosexual activity. Also, according to Nabulwala, the assaults occurred in the presence of the officers of the UHRC. The Immigration Judge had "problems with the credibility of that statement," and "great doubts that the Ugandan human rights commission had anything to do with this incident."

[2]Nabulwala testified that her father assaulted her at this time. The IJ had "concerns about" the allegation because she stated in her visa application that her father was the source of her financial support (she later inconsistently testified that her mother gave her the money to come to the United States).

In June 2001, Nabulwala entered the United States on an exchange visitor visa. When she overstayed her visa, the Immigration and Naturalization Service commenced removal proceedings. Nabulwala conceded removability, but countered by asserting asylum, withholding of removal, and protection under the Convention Against Torture.

The Immigration Judge found Nabulwala "to be generally credible," emphasizing that her testimony was generally consistent with a long affidavit attached to her application. The IJ did "not doubt that the respondent did suffer in Uganda because of her sexual orientation." Although the IJ concluded that this is a "difficult case," and that he "is sympathetic to the respondent's situation," he denied Nabuwala's application and designated Uganda as the country for removal. The BIA adopted and affirmed the IJ's decision, adding some of its own reasoning. Thus, this court reviews both decisions. *See Eta-Ndu v. Gonzales,* 411 F.3d 977, 982 (8th Cir. 2005), *quoting Krasnopivtsev v. Ashcroft,* 382 F.3d 832, 837 (8th Cir. 2004).

II.

Under the Immigration and Nationality Act, the Attorney General may grant asylum to any alien who is a "refugee." **8 U.S.C. § 1158(b)(1)**. A "refugee" is any person unable or unwilling to return to her country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. **8 U.S.C. § 1101(a)(42)(A)**.

The IJ explicitly (and the BIA implicitly) recognized that homosexuals may be a member of a "particular social group" under the statute. *See Karouni v. Gonzales*, 399 F.3d 1163, 1171 (9th Cir. 2005) (the BIA and Attorney General adopt the position that homosexuals are a protected class under the statute); *Amanfi v. Ashcroft,* 328 F.3d 719, 730 (3d Cir. 2003); *In re Toboso-Alfonso*, 20 I. & N. Dec. 819 (B.I.A. 1990) (recognizing homosexuals as a protected class). *Cf. Kimumwe v. Gonzales,* 431

F.3d 319, 322 (8th Cir. 2005); **Molathwa v. Ashcroft,** 390 F.3d 551, 554 (8th Cir. 2004) ("We will assume, for purposes of [petitioner's] appeal, homosexuals are a particular social group eligible for relief").

The IJ found that Nabulwala did not establish past persecution that met the level reflected in the *Toboso* case: "The Court does not doubt that the respondent did suffer in Uganda because of her sexual orientation. However, the Court does not believe that the state of law under the *Toboso-Alfonso* precedent reaches this claim." *Toboso* upheld relief for a homosexual who was detained by government officials for days and subjected to serious verbal and physical mistreatment. *See **Toboso***, 20 I. & N. Dec. at 823.

In this case, the IJ reasoned that the incidents at school and at the Wandegeya meeting were isolated and did not arise to that level of persecution. *See **Ngure v. Ashcroft,** 367 F.3d 975, 989-90 (8th Cir. 2004), *quoting **Regalado-Garcia v. INS,** 305 F.3d 784, 787 (8th Cir. 2002) (persecution is the "the infliction or threat of death, torture, or injury to one's person or freedom, on account of race, religion, nationality, membership in a particular social group, or political opinion"). As for the family-arranged rape, the IJ viewed it as "private family mistreatment." The IJ concluded that Nabulwala's past persecution was "not in any way government-sponsored or authorized abuse." *See **Menjivar v. Gonzales,** 416 F.3d 918, 921 (8th Cir. 2005); **Setiadi v. Gonzales,** 437 F.3d 710, 713 (8th Cir. 2006) (personal disputes are "not usually grounds for a finding of past persecution").

The IJ made findings only about "government involvement," that is, government sponsorship or government authorization. The IJ thus erred in concluding that to qualify for asylum, Nabulwala had to demonstrate persecution at the hands of government officials. Persecution may be "a harm to be inflicted either by the government of a country *or by persons or an organization that the government was unable or unwilling to control*." *See **Suprun v. Gonzales,** 442 F.3d 1078, 1080 (8th

Cir. 2006)(emphasis added); *see also* ***Valioukevitch v. INS,*** 251 F.3d 747, 749 (8th Cir. 2001) ("the harm [petitioner] endured must have been inflicted either by the government of Belarus or by persons or an organization that the government was unwilling or unable to control"); ***Menjivar,*** 416 F.3d at 921; ***Miranda v. INS,*** 139 F.3d 624, 627 (8th Cir. 1998).

The IJ made no finding as to whether the government was unable or unwilling to control persons who had harmed, or would harm, Nabulwala. Therefore, as to the government's inability or unwillingness, there were no findings of fact determined by the immigration judge. "Facts determined by the immigration judge" are the basis for review by the BIA. *See* **8 C.F.R.§ 1003.1(d)(3)(i)**. Because further factfinding was needed in this case, the BIA should have remanded to the IJ. *See* **8 C.F.R. § 1003.1(d)(3)(iv)**.

Instead, the BIA, after adopting and affirming the IJ's decision, states: "Concerning the issue of past persecution, the Immigration Judge correctly found that the respondent failed to demonstrate . . . that the government was unwilling to protect her." The BIA's statement is false. The IJ made no such finding.

To the extent that the BIA is finding facts about the government's unwillingness, such factfinding is not authorized. Since September 25, 2002, the BIA does not have authority to engage in factfinding, except to take administrative notice of commonly known facts. *See* **8 C.F.R. § 1003.1(d)(3)(iv)** ("the Board will not engage in factfinding in the course of deciding appeals"); **8 C.F.R. § 1003.3(f)**; ***Ramirez-Peyro v. Gonzales,*** No. 06-1569, slip op. at 7 (8th Cir. Feb. 23, 2007) (vacating the BIA's decision because it "engaged in its own factfinding in contravention of its regulations by determining that any threat to Ramirez would be restricted to the northern part of Mexico, making it possible for him to relocate elsewhere. The IJ made no specific findings about the geographic reach of the Juarez Cartel or other major drug trafficking networks*"*). *See also* ***Chen v. Bureau of***

-5-

*Citizenship & Immigration Servs.,* 470 F.3d 509, 513 (2d Cir. 2006) ("the BIA is no longer permitted to engage in de novo review of an IJ's factual finding"); *Recinos De Leon v. Gonzales,* 400 F.3d 1185, 1194 (9th Cir. 2005) ("We will not guess at the theory underlying the IJ's or the BIA's opinion. . . . the BIA may decide legal issues . . . but the BIA may not, under 8 C.F.R. § 1003.1(d)(3), make factual determinations in the first instance").

The government contends that 8 C.F.R. § 1003.1(d)(3)(iv) is not applicable because the regulation provides that a "party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion to remand." First, the government overlooks the next sentence of 8 C.F.R. § 1003.1(d)(3)(iv) that grants the BIA power to remand if further factfinding is needed. *See **Ramirez-Peyro,*** slip op. at 7. Second, when the IJ fails to find facts because the IJ applied an incorrect legal test, a party's request for the correct legal test preserves the request for appropriate factfinding. Third, the BIA may not find facts, as it attempted to do in this case.

### III.

The IJ made no findings about the government's inability or unwillingness to protect Nabulwala. The BIA's attempt to fill the gaps by finding facts is impermissible. This court grants the petition for review and remands to the BIA for further proceedings.

_____