**MEI QIN XIE, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 07–2774.

United States Court of Appeals, Third Circuit.

Argued Jan. 6, 2009.

Filed: Aug. 24, 2009.

---

Alan M. Strauss, Esq., (Argued), Law Office of Stanley H. Wallenstein, New York, NY, for Petitioner.

James A. Hunolt, Esq., Sada Manickam, Esq., David Schor, Esq., (Argued), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

Before: CHAGARES, and HARDIMAN, Circuit Judges, and GARBIS, District Judge.[1]

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

Mei Qin Xie ("Xie") petitions for review of an order denying her asylum, arguing that the Board of Immigration Appeals ("BIA") improperly applied the clearly erroneous standard of review to the Immigration Judge's ("IJ's") factual findings and that the BIA abused its discretion in denying her asylum. We will grant her petition for review and remand. e solely for the benefit of the parties, who are familiar with the factual context and legal history of this case, and will therefore set forth only those facts necessary to our analysis. Xie is a citizen and native of China. She entered the United States in November 1994 and applied for asylum in December 1994. Xie originally claimed that she had a fear of persecution based on her religion and involvement with a student protest. Between 1994, when Xie first applied for asylum, and 2002, when she had her asylum interview, she married Qi Guan, a naturalized Canadian citizen. Between 1998 and 2005, she gave birth to four children.

In March 2002, an Asylum Officer ("AO") denied her application. The AO then referred Xie's case to immigration court in New York City and initiated removal proceedings on March 22, 2002 by filing a Notice to Appear in Removal Proceedings. At the removal proceedings, the Department of Homeland Security ("DHS") charged Xie with deportability because she did not have valid entry documents when she came to the United States in 1994. Xie conceded the charge of deportability, but contended that she was eligible for asylum, withholding of removal, and deferral of removal under the Convention Against Torture ("CAT").

The IJ heard the case on September 14, 2004. At the hearing, Xie informed the IJ that she was changing the basis for her claim. She withdrew her claims about persecution based on the protest and reli-

---

1. Honorable Marvin J. Garbis, Senior United States District Judge for the District of Maryland, sitting by designation.

gion and based her claim solely on her fear of future persecution for violating China's "one child" policy. In an off the record conversation, she admitted to the IJ that her claims about the student group were not true and that she no longer feared persecution because of her religious beliefs.

The IJ granted Xie's asylum application on October 12, 2004, but denied her application for withholding of removal and deferral of removal under the CAT. DHS appealed, and on March 21, 2006 the BIA reversed the IJ's asylum decision and ordered Xie's removal to China. The BIA also denied Xie's withholding of removal and CAT claims, and as well as her request for voluntary departure.

Xie then appealed to this Court, arguing that the BIA had improperly applied a de novo standard of review to the IJ's fact finding instead of the proper clearly erroneous standard. This Court then remanded the case back to the BIA. On May 18, 2007, the BIA issued a new decision, again reversing the IJ's decision to grant Xie asylum, finding that the IJ's factual findings were clearly erroneous. It also determined that, in the exercise of its discretion, Xie did not merit asylum or voluntary departure.

## I.

The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b). This Court has jurisdiction under the Immigration and Nationality Act. 8 U.S.C. § 1252; *Wong v. Attorney General,* 539 F.3d 225, 230 (3d Cir. 2008). We review de novo whether the BIA properly applied the clear error standard to the IJ's factual and credibility findings. *Kabba v. Mukasey,* 530 F.3d 1239, 1245 (10th Cir.2008).

## II.

The applicable regulations provide that the BIA should review the IJ's factual determinations under a "clearly erroneous" standard, and that the BIA should not itself engage in factfinding:

(i) The Board will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous....

(iv) Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals. A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand. If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge or, as appropriate, to the Service.

8 C.F.R. § 1003.1(d)(3)(i) and (iv).

However, "[t]he Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo." 8 C.F.R. § 1003.1(d)(3)(ii). The BIA may also exercise de novo review when it analyzes "the application of a particular standard of law to [the] facts," including whether the harm alleged rises to the level of a well-founded fear of persecution. *Matter of A–S–B–,* 24 I. & N. Dec. 493, 496–97 (2008); *Matter of V–K–,* 24 I. & N. Dec. 500, 501 (2008) (citation omitted) ("[T]here was no intent to apply the restrictive 'clearly erroneous' test to mixed questions of fact and law where the so-called 'fact' consists of a finding as to the degree of possibility of a result occurring that is necessary to sustain a statutory basis for eligibility (e.g., the extent of hardship or the chance of

persecution or torture if the alien is removed.).”); The Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed.Reg. 54878, 54890 (Aug. 26, 2002).

We hold that the BIA improperly applied the clearly erroneous standard when it rejected the IJ’s factual findings.[2] The IJ found that Xie had “established a reasonable possibility that if she were to return to China with her children ... she could suffer significant financial harm and be subject to a forced abortion or sterilization with respect to her current pregnancy.” Appendix (App.) 13. This is a factual finding which the BIA should have reviewed for clear error. *Cf. Wong*, 539 F.3d at 230 (citation and quotation marks omitted) (“[t]he BIA’s conclusions regarding evidence of ... the well-founded fear of persecution are findings of fact....”). Rather than apply the correct standard, however, the BIA appears to have engaged in a de novo review of the record.

For instance, purporting to apply the proper, clearly erroneous standard, the BIA found that the IJ committed clear error when she concluded that Xie could “ ‘suffer significant financial harm’ ” and that “ ‘social compensation fees can be sufficiently exorbitant enough to accomplish the same end as physical force, i.e., coercion’ ” because the IJ did not provide a citation to a particular part of the Country Condition reports in making this finding. App. 5. The BIA alternatively cited an example of a woman who had to pay only about $60 per child in fines. App. 5–6. Xie, however, points to information contained in the Country Condition reports to support the IJ’s finding. The U.S. State Department Report from 2003, for example, states that the threat of economic sanctions for violating the child planning laws “sometimes left women with little practical choice but to undergo abortion or sterilization.” App. 188. The same report states that, while fees varied, they were “generally extremely high” and “ranged from one-half to eight times the average worker’s annual disposable income.” *Id.* A 2004 report makes similar statements. *See* App. 234–37. This example illustrates that the BIA appeared to conduct a de novo review of the evidence rather than analyze whether the IJ’s findings were “permissible” interpretations. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).[3] This was improper, and this Court will remand to the BIA conduct a proper analysis.

The second issue is whether the BIA erred when it declined to grant Xie’s request for asylum. In deciding not to grant Xie’s request, the BIA found that Xie was not credible. Just as with the first issue, this Court reviews, de novo, whether the

---

**2.** In *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Supreme Court explained that “the foremost” of the principles guiding a clearly erroneous analysis is that “[a] finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” 470 U.S. at 573, 105 S.Ct. 1504 (citations and internal quotation marks omitted, brackets in original). The Court went on to state that “[w]here there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” *Id.* at 574, 105 S.Ct. 1504 (citations omitted).

**3.** The BIA is permitted to engage in factual finding when it takes administrative notice of official documents such as State Department reports. 8 C.F.R. § 1003.1(d)(3)(iv); *Shao v. Mukasey*, 546 F.3d 138, 166 (2d Cir.2008). Because the IJ’s findings with regard to this issue were based solely on the country condition reports, the BIA could have properly engaged in a de novo review of those reports to come to a different conclusion from the IJ. However, the BIA purported to review the evidence for clear error, and so we remand.

BIA applied the proper standard of review to the IJ's decision. *Kabba,* 530 F.3d at 1245. The BIA should review the IJ's credibility findings under a clearly erroneous standard. 8 C.F.R. § 1003.1(d)(3)(i). Here, the IJ found that Xie's explanations were credible. She explained:

> Despite [Xie's] failure at her March 7, 2002, asylum interview to disavow her alleged student political activities as written in her 1994 I–589, the Court finds that she credibly explained during this hearing that at the time of that interview, she did as she was directed by her attorney and repeated the claim as it appeared in her I–589. A comparison of the March 7, 2002, Assessment to Refer (Exhibit 5) and the I–589 bears this out.

App. 13–14. The IJ continued:

> [Xie] also credibly explained why she had included the political activity as a basis for her original claim. She testified how she simply signed her name to an application, as she was directed, in order to get a Social Security card. Thus, the Court finds these discrepancies, which [Xie] has credibly explained and rehabilitated, were previous wrong allegations.

App. 14. The IJ, then, found that Appellant had credibly explained why she had lied at her asylum interview. It was only then that the IJ exercised her discretion to find that Appellant merited asylum. *Id.*

The BIA gave no reasons as to why it rejected the IJ's determination that Xie had credibly explained, at least, the discrepancies between her initial application and her current one and/or why she gave false testimony at her asylum hearing. Indeed, the BIA did not cite to the clearly erroneous standard in this section of its opinion at all. Therefore, this Court will remand this matter to the BIA in order for the BIA to apply properly the clearly erroneous standard of review to the IJ's credi-

bility determinations. *Ramirez–Peyro v. Gonzales,* 477 F.3d 637, 641 (8th Cir.2007).

### III.

For the foregoing reasons, Xie's petition for review will be granted, and this cause will be remanded to the BIA for further consideration consistent with this opinion.