# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1682

_____

Maria Garcia-Mata,

*Petitioner,*

v.

Jefferson B. Sessions, III, Attorney General of the United States,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: January 9, 2018
Filed: June 29, 2018

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Maria Garcia-Mata, a citizen of Mexico, petitions for review of a decision of the Board of Immigration Appeals. After an immigration judge ordered withholding of removal, the Board vacated that decision, denied relief, and ordered Garcia-Mata removed to Mexico. Garcia-Mata argues that the Board conducted *de novo* review and made its own findings of fact, contrary to governing regulations. We cannot tell

from the Board's rather opaque opinion whether the agency followed its regulations and applied the correct standard of review, so we remand for the Board to clarify its decision.

Garcia-Mata entered the United States in the 1990s when she was eight years old and was deported in 2015 after sustaining criminal convictions. She attempted to re-enter the country using a stolen passport, but was caught by border patrol agents. She served a five-month prison sentence and then was deported to Mexico for a second time. In an effort to aid her return to the United States yet again, Garcia-Mata's husband, with help from her father, hired a group to smuggle her across the border.

According to Garcia-Mata, a member of this group instructed her to take a bus to the border city of Nogales, Mexico. Once she arrived, a waiting taxi took her to a house in Nogales. Garcia-Mata waited at the house for almost two weeks. While she was waiting, members of the group told her that they were "not allowed to make any mistakes," and that "they will never leave a loose string." She frequently saw armed men come in and out of the house. At one point, a man allegedly wearing a United States Border Patrol uniform told Garcia-Mata what questions to expect at the border and how to answer them.

Border Patrol agents apprehended Garcia-Mata when she and a member of the smuggling group entered the United States. Garcia-Mata was detained as a material witness against the smuggler, but she was never called to testify against him.

After Garcia-Mata was detained by authorities, someone in the smuggling group contacted her husband to let him know that she was detained and the reason why. The husband also received a series of text messages purportedly from someone in the group. One stated that "your wife . . . pointed the finger at him. You don't do

that shit, man." Another stated that when Garcia-Mata "got out," "they had something to ask [her]."

In Mexico, the smuggling group had taken Garcia-Mata's cell phone and her Mexican identification with addresses for her grandparents in Mexico and family in Kansas City. The group began to contact people listed as contacts in the telephone to find out more about Garcia-Mata, so her sister-in-law cancelled Garcia-Mata's phone service shortly after Garcia-Mata was detained. Neither Garcia-Mata nor her family received any communications from the smuggling group after the series of text messages sent to the husband.

The immigration judge found that Garcia-Mata was a member of the particular social group "witnesses in criminal proceedings who will be targeted in Mexico." The judge found Garcia-Mata credible and concluded that "the organized smuggling criminal organization would have the capability and the knowledge of [Garcia-Mata's] address to carry out any threats." The immigration judge ultimately concluded that future persecution was more likely than not to occur if Garcia-Mata were removed to Mexico, so he granted her application for withholding of removal.

The government appealed and argued that the immigration judge erroneously concluded that Garcia-Mata met her burden of proof to establish that she was eligible for withholding of removal. The Board agreed, concluding "that the Immigration Judge's findings as to whether [Garcia-Mata] met her burden in establishing the likelihood of future persecution for purposes of withholding of removal is not supported by the evidence in the record or the precedent of the United States Court of Appeals for the Eighth Circuit." The Board reasoned that the threats were "non-specific" and came "from an unidentified source." The Board criticized the immigration judge's conclusion that the smuggling group had the "capability and knowledge" to carry out threats against Garcia-Mata as "based on his own speculation rather than evidence contained in the record." One Board member dissented on the

ground that the Board is limited to "clear error" review of predictive fact-finding, and that the government had not demonstrated clear error in the immigration judge's finding that future persecution was more likely than not.

Garcia-Mata petitions for review, arguing the Board applied the incorrect standard of review to the immigration judge's factual findings. We review this question *de novo*, considering both the standard recited by the Board and the Board's analysis. *Waldron v. Holder*, 688 F.3d 354, 360-61 (8th Cir. 2012); *Ramirez-Peyro v. Gonzales*, 477 F.3d 637, 641 (8th Cir. 2007).

This appeal requires attention to two settled principles of administrative law. One is that an agency, in adjudicating the rights of individuals, must follow its own procedures and regulations. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *Suciu v. INS*, 755 F.2d 127, 129 (8th Cir. 1985) (per curiam); *Singh v. U.S. Dep't of Justice*, 461 F.3d 290, 296 (2d Cir. 2006). The second provides that in rendering an agency decision that is subject to judicial review, the Board "must describe its reasoning 'with such clarity as to be understandable.'" *Singh v. Gonzales*, 495 F.3d 553, 557 (8th Cir. 2007) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

The relevant regulation here says that the Board has authority to review an immigration judge's factual findings for clear error, 8 C.F.R. § 1003.1(d)(3)(i), and to consider all other issues *de novo*. *Id.* § 1003.1(d)(3)(ii). The Board lacks authority to engage in factfinding of its own, *Nabulwala v. Gonzales*, 481 F.3d 1115, 1118 (8th Cir. 2007), and the Board itself has said that "[a] factfinding may not be overturned simply because the Board would have weighed the evidence differently or decided the facts differently had it been the factfinder." *In re R-S-H*, 23 I. & N. Dec. 629, 637 (BIA 2003) (quoting Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54,878, 54,889 (Aug. 26, 2002)).

-4-

In this case, the Board rejected findings of fact made by the immigration judge, but we cannot discern from the Board's decision whether it followed the governing regulations on standards of review. In discussing the evidence, the Board never directly asserted that the immigration judge committed clear error. After stating its overall conclusion that the immigration judge's "findings" were not "supported" by the evidence or by precedent of this court, the Board did cite the regulation that sets forth the standards of review for both findings of fact and questions of law. *See* 8 C.F.R. § 1003.1(d)(3). But even the meaning of this citation is murky, for there are different standards of review for questions of law and findings of fact. The reference to both evidence and circuit precedent (*i.e.*, law) in a sentence about factual findings raises the question whether the Board confused or mixed the standards of review. Without more explanation, we are unable to resolve whether the Board conducted impermissible factfinding of its own.

For these reasons, the petition for review is granted. The case is remanded to the Board for further proceedings in which it may clarify its decision or apply the correct standard of review as appropriate. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam); *Osakwe v. Mukasey*, 534 F.3d 977, 979 (8th Cir. 2008); *Ramirez-Peyro v. Gonzales*, 477 F.3d 637, 641 (8th Cir. 2007). We express no view, of course, on the merits of the administrative appeal.

_____