# United States Court of Appeals
### For the Eighth Circuit
_____

No. 20-2662
_____

Musla Salat

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States[1]

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: October 19, 2021
Filed: April 28, 2022
_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Musla Abdulkadir Salat, a native and citizen of Somalia, petitions for review of an order of the Board of Immigration Appeals (BIA). The BIA's order reversed the decision of the immigration judge (IJ) granting Salat's application for deferral of

_____

[1]Respondent Garland is automatically substituted for his predecessor under Federal Rule of Appellate Procedure 43(c)(2).

removal to Somalia under the Convention Against Torture (CAT). Having jurisdiction under 8 U.S.C. § 1252, we deny the petition in part and remand.

I.

Salat was born in Kismayo, Somalia, on January 1, 1995. He fled Somalia to Kenya in 2005, and in 2012, he arrived in the United States and was admitted as a refugee. He became a lawful permanent resident two years later. Salat suffers from mental illnesses, including schizophrenia, depression, and post-traumatic stress disorder.

In 2017, Salat was convicted of terroristic threats, in violation of Minn. Stat. § 609.713, subdiv. 1. In 2018, Salat was convicted of assault in the fifth degree with two or more previous convictions in three years, in violation of Minn. Stat. § 609.224, subdiv. 1 and 4(b). As a result of his terroristic threats and assault convictions, the Department of Homeland Security (DHS) charged Salat with removability as a noncitizen[2] convicted of a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(i) and an aggravated felony under § 1227(a)(2)(A)(iii). Salat admitted the factual allegations and conceded removability as charged, but he sought several forms of relief from removal: asylum, withholding of removal, and protection under CAT.

An IJ initially sustained both charges of removability. Subsequently, however, Salat appealed his state conviction for assault in the fifth degree to the Minnesota Court of Appeals. This action led a second IJ to reverse the first IJ's ruling with respect to removability under § 1227(a)(2)(A)(iii). The second IJ[3] granted Salat's application for asylum after holding a hearing at which Salat and his

_____

[2]The United States Code and accompanying federal regulations use the term "alien." This opinion maintains that nomenclature when quoting directly from the text or case law. Otherwise, it replaces "alien" with "noncitizen."

[3]All subsequent IJ references are to the second IJ.

social worker testified.  DHS timely appealed to the BIA.  While DHS's appeal was pending, the Minnesota Court of Appeals dismissed Salat's appeal of his assault conviction, causing his conviction for assault in the fifth degree to become final.  As a result of the assault conviction becoming final, the BIA remanded Salat's case for further proceedings and a new decision on relief.  On remand, the IJ denied Salat's application for asylum and withholding of removal, but it granted his request for deferral of removal to Somalia under CAT.  The IJ incorporated the findings of fact section from its earlier decision granting asylum.

In its written decision, the IJ noted that Salat's assault conviction was final and that it constituted an aggravated felony, as defined in 8 U.S.C. § 1101(a)(43)(F). The IJ found that Salat's aggravated felony offense was a "particularly serious crime," rendering him ineligible for asylum under § 1158(b)(2)(A)(ii) and (B)(i) and withholding of removal under § 1231(b)(3)(B)(ii).  The IJ thus denied Salat's request for asylum and withholding of removal.  Regarding Salat's claim for deferral of removal under CAT, the IJ identified several situational factors that would render Salat vulnerable to harm if removed to Somalia, including his lack of familial and community ties in Somalia, mental illnesses, long absence from Somalia, job instability, and membership in a minority clan.  The IJ determined that it was more likely than not that Salat would either be institutionalized at a mental health facility or become an internally displaced person (IDP) and that the treatment he would receive in either context would constitute torture.  The IJ also found that Salat could not relocate within Somalia without fear of being harmed.  Finally, the IJ found that the Somali government would acquiesce to Salat's torture.  Therefore, the IJ determined that Salat met his burden of proof to show that he would more likely than not experience torture if removed to Somalia, and accordingly, the IJ granted Salat relief under CAT.

DHS appealed to the BIA, arguing that the IJ incorrectly determined that Salat would be tortured in a Somali mental health facility.  DHS further argued that it was speculative and flawed to find that Salat would be forced to live in an IDP camp, then evicted by government officials, and subsequently tortured by al-Shabaab, a

terrorist group. The BIA agreed that the IJ erroneously found that Salat would more likely than not be placed in a mental health facility and that, if placed in a mental health facility, it would be one where there is specific intent to torture. Further, while the BIA found no clear error in the IJ's finding that Salat would more likely than not reside in an IDP camp if removed, the BIA determined that the IJ erred in finding that Salat would more likely than not be forcibly evicted from an IDP camp by the Somali government and relocated to territory controlled by al-Shabaab. Accordingly, the BIA vacated the IJ's decision and ordered Salat removed to Somalia.

## II.

Salat challenges the BIA's reversal of the IJ's grant of deferral of removal under CAT, asserting that the BIA failed to provide sufficient justification for its determination. Because the BIA applied the clear error standard, "we consider whether the [BIA] provided sufficient justification for its determination. This means that the [BIA] must adequately explain why it rejected the IJ's finding and identify reasons grounded in the record that are sufficient to satisfy a reasonable mind that there was clear error." Abdi Omar v. Barr, 962 F.3d 1061, 1064 (8th Cir. 2020).[4] "While 'we ordinarily review only the BIA's decision, "we also review the IJ's decision as part of the final agency action" if "the BIA adopted the findings or the reasoning of the IJ.""" Jama v. Wilkinson, 990 F.3d 1109, 1115 (8th Cir. 2021) (citation omitted).

---

[4]Salat argues for the sufficient justification standard of review, while the government invokes the substantial evidence standard. Under the substantial evidence standard, "we will unsettle factual findings only if 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Moallin v. Barr, 980 F.3d 1207, 1209 (8th Cir. 2020) (citation omitted). In the past, we have declined to "plumb the distinction between the standards of review . . . because we would come to the same conclusion under either standard." Lasu v. Barr, 970 F.3d 960, 968 n.1 (8th Cir. 2020). For purposes of the present petition, we apply the sufficient justification standard as requested by Salat and reserve judgment on the proper standard.

A noncitizen's removal may be deferred under CAT, even if the "particularly serious crime" bar applies. See 8 C.F.R. §§ 1208.16(c)(4), .17(a). To be eligible for relief under CAT, a noncitizen must "establish that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." Id. § 1208.16(c)(2). Torture includes:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity.

Id. § 1208.18(a)(1). The IJ identified two contexts in which Salat would likely face torture: institutionalization at a mental health facility and as an IDP. The BIA concluded that the IJ clearly erred in finding that Salat would more likely than not face torture in either context.

## A.

Salat first challenges the BIA's conclusion that the IJ clearly erred in finding that Salat would likely face torture in a mental health facility. Regarding the likelihood of institutionalization, Salat focuses on the admissions practices of Somali mental health facilities. He acknowledges record evidence of instances in which facilities required patients' family members provide financial support, but Salat claims that this evidence does not indicate that familial commitment and financial support are prerequisites or general practices for admission to Somali mental health facilities.

The IJ claimed that the risk of institutionalization is high. However, the IJ recognized that "[a]ccess to mental health services and medication is scarce." The

IJ in part determined that Salat would likely not be institutionalized at a private facility due to "[h]is lack of familial and community ties" in Somalia and the cost of private care. And despite its conclusion that Salat would likely be institutionalized, the IJ cited no evidence as to the number of Somalis institutionalized and how Somalis are admitted to public facilities.

We conclude that the BIA "squarely address[ed] the evidence on which the IJ based its finding" and ultimately provided sufficient justification as to why Salat is unlikely to be institutionalized in Somalia. Abdi Omar, 962 F.3d at 1064 (alteration in original) (citation omitted). Though it is undisputed that Salat suffers from mental illnesses, the BIA cited record evidence noting the limited number of mental health facilities in Somalia and both public and private facilities' admissions requirement of payment by a patient's family.[5] The BIA recognized that Salat lacks familial ties in Somalia and has limited financial resources. Salat argues that the BIA identified insufficient evidence to show that familial commitment and financial support are prerequisites to institutionalization, but he fails to cite evidence that admission to public or private Somali mental health facilities does not require familial support and money, and he offers no other evidence apart from his situational factors to support the IJ's finding, such as expert testimony on the probability of his institutionalization. See Jama, 990 F.3d at 1118-19 (reviewing expert's testimony that petitioner faced an 80% or greater chance of institutionalization in Somalia).

---

[5]Both the BIA and IJ cited record evidence discussing mental health facilities in Somaliland. The BIA appeared to question the relevance of this evidence because Somaliland is a self-declared republic that limits the entry of Somalis without a connection to the area. See Admin. R. 4 n.1. While Somaliland is a self-declared republic, the United States does not recognize its sovereignty and instead considers Somaliland to be within Somalia. See United States v. Ali, 718 F.3d 929, 933 (D.C. Cir. 2013); U.S. Dep't of State, U.S. Relations with Somalia (Dec. 19, 2019), https://state.gov/u-s-relations-with-somalia/ ("The United States recognizes the sovereignty and territorial integrity of Somalia within its 1960 borders in accordance with the Somali provisional constitution, which includes Somaliland and Puntland."). We therefore regard as relevant record evidence about Somaliland's mental health facilities.

We will not disturb the BIA's findings as to the unlikelihood of Salat's institutionalization because the BIA identified reasons grounded in the record sufficient to satisfy a reasonable mind.  See Abdi Omar, 962 F.3d at 1064. Therefore, we need not address the likelihood of torture in Somali mental health facilities.  See INS v. Bagamasbad, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

B.

Salat next challenges the BIA's conclusion that the IJ clearly erred in finding that Salat would more likely than not be tortured as an IDP forcibly evicted from an IDP camp.  The BIA discerned no clear error in the IJ's finding that, if Salat is removed to Somalia, he would more likely than not reside in an IDP camp due to his lack of familial and community ties in the country and limited financial resources. But the BIA disagreed with the IJ's assessment of what Salat would likely experience once in an IDP camp.  Salat argues that the BIA failed to meaningfully address the record evidence examined by the IJ indicating that Salat would likely face torture in an IDP camp and then, after being forcibly evicted from an IDP camp, endure torture by al-Shabaab.

The BIA gave sufficient justification for its determination that Salat failed to show that he would more likely than not be forcibly evicted from an IDP camp.  The IJ cited record evidence that Somalia is home to 2.6 million IDPs, and from January 2018 to April 2019, more than 204,000 IDPs were evicted (approximately 7.85% of Somali IDPs).  The IJ did not expressly find that mentally ill Somalis are more likely to be forcibly evicted but rather that they suffer more in IDP camps, in territory controlled by al-Shabaab, and when moving through the country.  The BIA relied on the above statistics to conclude that the IJ clearly erred in finding that Salat would likely be forcibly evicted from an IDP camp.  The record notes that disabled Somalis are subject to "a myriad of abuse, including . . . forced evictions," which the government acknowledges in its brief, but this evidence is not specific to those with

-7-

mental illnesses and does not state that mentally ill Somalis face a higher probability of forced eviction than those without mental illnesses. Salat raises the possibility that he could be evicted from a safer, urban camp to a more dangerous, rural camp, but the record evidence he cites does not support this claim, as it fails to compare the safety of camps in different locations. Therefore, we will not disturb the BIA's conclusion regarding the likelihood of Salat's eviction from an IDP camp.

Further proceedings are required, however, for the BIA to address in the first instance the IJ's findings regarding Salat's likely treatment in an IDP camp and what part of the IDP camp experience would constitute torture. We find the portion of the IJ's decision on IDP camps to be murky. The BIA did not address whether the IJ's discussion of forceful eviction to areas controlled by al-Shabaab is meant to highlight one of several types of harm Salat would endure as a mentally ill IDP or represents part of a singular hypothetical chain of events that the IJ found likely to occur should Salat be removed to Somalia. Salat argues for the first interpretation, while the government advances the second, more narrow interpretation. The BIA, however, did not adopt an interpretation of the IJ's discussion, remand for clarification, or otherwise address the issue. Under either interpretation, CAT relief requires that "[s]pecific grounds . . . exist that indicate [Salat] would be personally at risk." Abdi Omar, 962 F.3d at 1065 (citation omitted).

We decline to speculate as to which interpretation is accurate. Instead, we conclude that the BIA erred by resolving DHS's appeal without addressing the IJ's findings regarding treatment in IDP camps. "Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam). Because "a 'judicial judgment cannot be made to do service for an administrative judgment,'" remand is appropriate for "additional investigation or explanation." Id. (citations omitted).

The government suggests that, if we determine it necessary to address Salat's claim of treatment in an IDP camp, we may do so based on the record without

remand. It notes that whether an act meets the definition of torture is a legal issue to be reviewed de novo. See Lasu, 970 F.3d at 966-67. The BIA's error, however, was its failure to address the IJ's discussion regarding treatment of persons in IDP camps, and the BIA did not reach a legal conclusion for this Court to review on whether any particular treatment in an IDP camp would amount to torture. We express no view on whether the general treatment in Somalia of mentally ill IDPs, and particularly those in Salat's minority clan, meets the statutory definition of torture.

## III.

Accordingly, we deny the petition for review in part, grant the petition in part, and remand to the BIA for further proceedings consistent with this opinion.

COLLOTON, Circuit Judge, concurring.

Judge Kelly's separate opinion suggesting how the Board of Immigration Appeals should resolve the case on remand prompts this short concurrence. This court remands the case to the Board because the Board did not address a portion of the immigration judge's decision referring to the treatment of internally displaced persons "in . . . IDP camps." A.R. 86. As a matter of administrative law, it is for the Board to address in the first instance whether the immigration judge made a finding that petitioner Salat likely would suffer torture in an IDP camp and, if so, whether that finding is clearly erroneous. If the Board determines that a remand for clarification is warranted, then it has that authority as well. But these are matters to be decided first by the agency, not by this court. *See INS v. Ventura*, 537 U.S. 12, 16-18 (2002) (per curiam). This is not, for example, a case where the Board impermissibly construed a decision of the immigration judge as making an essential finding that was never made, such that a remand to the immigration judge was the only possible course. *Cf. Kassim v. Barr*, 954 F.3d 1138, 1141-42 (8th Cir. 2020). Nor is it a situation like the one discussed in *Waldron v. Holder*, 688 F.3d 354 (8th Cir. 2012), where this court said that the Board should have remanded if it concluded

-9-

that the immigration judge erred by not addressing a relevant fact. *Id*. at 361. Rather, the Board here simply did not speak to an issue that was lurking in the record, and the proper remedy is to direct the Board to address the question that it overlooked.

KELLY, Circuit Judge, concurring.

As the court finds, the portion of the IJ's decision on IDP camps is murky; the IJ did not make a clear factual finding about whether Salat is more likely than not to be subjected to torture even if he were not forcibly evicted from an IDP camp. See Jima v. Barr, 942 F.3d 468, 473 (8th Cir. 2019) (IJ findings regarding likelihood of future events, including torture under the CAT, are factual findings). In my view, if the BIA were to draw its own conclusion about Salat's likelihood of torture within an IDP camp, it would engage in impermissible factfinding. See Garcia-Mata v. Sessions, 893 F.3d 1107, 1110 (8th Cir. 2018) ("The Board lacks authority to engage in factfinding of its own." (citing Nabulwala v. Gonzales, 481 F.3d 1115, 1118 (8th Cir. 2007))). Because the IJ did not make a distinct factual finding on the likelihood of Salat being tortured within an IDP camp, the proper course of action is for the BIA to remand the case to the IJ for further factfinding or clarification. See, e.g., Nabulwala, 481 F.3d at 1118 ("'Facts determined by the immigration judge' are the basis for review by the BIA." (quoting 8 C.F.R. § 1003.1(d)(3)(i))); Waldron v. Holder, 688 F.3d 354, 361 (8th Cir. 2012) (explaining that the BIA should remand a case to the IJ for further factfinding if an IJ does not specifically address a question of fact); Kassim v. Barr, 954 F.3d 1138, 1142 (8th Cir. 2020) (instructing BIA to remand to IJ for factual finding on whether petitioner would more likely than not suffer torture in Somalia). Because the court's opinion does not preclude this result, I concur in full.

_____