**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2229
_____

BOSBELI SAPON-ORDONEZ,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A088-645-576 )
Immigration Judge:  Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 14, 2012
Before:  FISHER, WEIS and BARRY, Circuit Judges

(Opinion filed: April 2, 2012)
_____

OPINION
_____

PER CURIAM.

Bosbeli Sapon-Ordonez petitions for review of a Board of Immigration Appeals

(BIA) decision denying his application for withholding of removal and protection under

the United Nations Convention Against Torture (CAT).  For the following reasons, we will deny the petition for review

## I.

Sapon-Ordonez, a citizen of Guatemala, entered the United States without inspection in January 2006, and was apprehended during the execution of a search warrant in Bristol, Pennsylvania.[1]  Administrative Record (A.R.) 158.  Conceding removability, he filed an application for asylum,[2] withholding of removal, and CAT protection.  Sapon-Ordonez claimed that, as an indigenous Guatemalan, he was targeted for persecution by "maras" (roving gangs) in his village.  Beginning in 2002, these gangs began to harass him and his family, requesting ever-increasing payments—which they called a "peace tax"—and demanding that he join their ranks.  A.R. 204.  The police were unwilling to help him, see A.R. 142, and following a December 2005 beating, he fled the country.  Sapon-Ordonez insisted that he could not return to Guatemala at all, as relocation within the country would not be possible because the gang "control[s] everything [and] it's a big gang."  A.R. 143.  He further explained that he was targeted because the gangs "look for people that the law does not protect," such as indigenous persons.  A.R. 145–46.

---

[1] Because the parties are our primary audience, we will not recount Sapon-Ordonez's story with the level of detail developed in the agency proceedings.  However, we have undertaken a full and complete review of the record.

[2] Sapon-Ordonez's asylum application was found to be untimely, and he does not press any asylum-related issues before this Court.

Despite finding Sapon-Ordonez to be a "credible witness," A.R. 84, the IJ denied

relief, concluding (inter alia) that the abuse he suffered did not rise to the level of

persecution.  A.R. 85–86.  The BIA dismissed the appeal, holding that 1) Sapon-Ordonez

had not shown that his status as an indigenous person was "one central reason" for the

harassment he suffered, and 2) the mistreatment alleged did not rise to the level of

persecution.  A.R. 3–4.  Therefore, Sapon-Ordonez had failed to present evidence of past

persecution, and was thus not entitled to a presumption of future persecution.  A.R. 4.

The BIA further concluded that Sapon-Ordonez had failed to show a clear

probability of future persecution upon his return to Guatemala.  Although he "expressed

continued fear of retaliation for his rejection of gang recruitment . . . , threats related to

gang recruitment are generally not considered persecution on an enumerated ground."

A.R. 4.  Moreover, Sapon-Ordonez's "fear of generalized turmoil d[id] not, without

more, qualify him for withholding of removal," and while "there [wa]s some

discrimination against indigenous people, [the background information on Guatemala]

d[id] not demonstrate a pattern or practice of persecution."  A.R. 4.  The BIA also denied

claims related to the Fifth Amendment and declined to grant CAT protection.  A.R. 4–5.

This counseled petition for review followed.

**II.**

We have jurisdiction under 8 U.S.C. § 1252(a) to review the BIA's decision,

looking "to the IJ's ruling only insofar as the BIA defer[red] to it."  Huang v. Att'y Gen.,

620 F.3d 372, 379 (3d Cir. 2010).  "We will uphold the findings of the BIA to the extent

that they are supported by reasonable, substantial and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the BIA did." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). Legal conclusions are considered de novo. Berishaj v. Ashcroft, 378 F.3d 314, 330 (3d Cir. 2004).

Under the INA, an alien qualifies for withholding of removal "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "This standard is similar to, but more stringent than, the standard for asylum. Whereas an asylum applicant need only establish a 'well-founded fear' of persecution, a withholding applicant must establish a 'clear probability' that his life or freedom would be threatened because of an enumerated characteristic. 'Clear probability' means that it is 'more likely than not' that an alien would be subject to persecution." Li v. Att'y Gen., 633 F.3d 136, 140 (3d Cir. 2011); see also Dong v. Att'y Gen., 638 F.3d 223, 228 (3d Cir. 2011) (citing 8 C.F.R. § 208.16(b)(1); INS v. Stevic, 467 U.S. 407, 429–30 (1984)). In order to qualify for protection under the CAT, an alien must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2); see also Dong v. Att'y Gen, 638 F.3d 223, 228–29 (3d Cir. 2011).

**III.**

A) Past Persecution

4

The BIA determined that the abuse suffered by Sapon-Ordonez "did not rise to the level of persecution." A.R. 4. Its conclusion was supported by substantial evidence.[3] Persecution consists of "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom." Lukwago v. Ashcroft, 329 F.3d 157, 168 (3d Cir. 2003) (citation omitted). "While this Court has not yet drawn a precise line concerning where a simple beating ends and persecution begins, our cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution." Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005). The record is equivocal on the extent of Sapon-Ordonez's injuries; for example, in his affidavit, Sapon-Ordonez implied that he was beaten severely, but he told the IJ that he was "hit." Compare A.R. 204, with A.R. 142. Thus, the BIA did not err in finding the incidents in question to fall short of "persecution" as defined in our case law.

Hence, because Sapon-Ordonez did not demonstrate past persecution, he was not entitled to a presumption of future persecution.

B) Future Persecution

In determining that Sapon-Ordonez had not shown a clear probability that he would be persecuted if returned to Guatemala, the BIA emphasized that Sapon-Ordonez's fear of "generalized turmoil" and a record that showed "some discrimination against

---

[3] We therefore need not address the BIA's alternative determination regarding whether an enumerated ground was "one central reason" for the harassment. See 8 U.S.C. § 1158(b)(1)(B)(i); Li v. Att'y Gen., 633 F.3d 136, 142 n.4 (3d Cir. 2011).

5

indigenous people" did not suffice to qualify him for withholding of removal. See A.R. 4. It therefore denied his appeal.

Unlike the question of past persecution, Sapon-Ordonez's worries of his fate upon returning to Guatemala present a closer issue. We observe that the State Department's 2007 Human Rights Report reflects "pervasive" discrimination against indigenous people, as well as "ethnic discrimination in employment and occupation." A.R. 173. While Sapon-Ordonez's fear of persecution may be subjectively reasonable, however, we are not compelled to conclude that it is also objectively so. See Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 347 (3d Cir. 2008). The treatment described by the State Department report does not necessarily establish a "pattern or practice" of activities meeting the definition of "persecution." See Sukwanputra v. Gonzales, 434 F.3d 627, 637 (3d Cir. 2006); see also Wong v. Att'y Gen., 539 F.3d 225, 236 (3d Cir. 2008) ("[H]arassment and discrimination do not constitute persecution."); Chen v. Ashcroft, 381 F.3d 221, 233 (3d Cir. 2004) ("[C]ourts routinely deny relief to those who suffer racial discrimination that falls short of 'persecution' . . . ."); Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003). A reasonable arbiter might well conclude to the contrary, but "[w]here the record supports plausible but conflicting inferences in an immigration case, the . . . choice between those inferences is, a fortiori, supported by substantial evidence." De Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007). Given the particularly deferential standard of review that governs withholding of removal, we must uphold the BIA's determination.

C) <u>Convention Against Torture</u>

The BIA correctly determined that Sapon-Ordonez had not met his burden under the CAT. He made no showing of the likelihood of torture should he return to Guatemala.

D) <u>Due Process</u>

Finally, Sapon-Ordonez argues that the IJ failed to give adequate weight to his mother's affidavit and the evidence contained in the State Department report denied him due process. The BIA retains the power "to weigh and evaluate evidence introduced before the IJ." <u>Rotinsulu v. Mukasey</u>, 515 F.3d 68, 73 (1st Cir. 2008). We see no indication that the manner in which the BIA evaluated the evidence—or the extent to which it implicitly relied on the IJ's weighing of evidence—violated due process and affected Sapon-Ordonez's ability to fairly present his case. <u>See</u> <u>Khan v. Att'y Gen.</u>, 448 F.3d 226, 236 (3d Cir. 2006).

## IV.

For all of the above reasons, we will deny the petition for review.